| | |
|---|---|
| **SLACK & DAVIS, LLP** | **MILSTEIN JACKSON FAIRCHILD &** |
| Michael L. Slack (TX Bar No. 18476800) (to | **WADE, LLP** |
| apply *pro hac vice*) | Gillian L. Wade (CA Bar No. 229124) |
| mslack@slackdavis.com | gwade@mjfwlaw.com |
| John R. Davis (CA Bar No. 308412) | Sara Avila (CA Bar No. 263213) |
| jdavis@slackdavis.com | savila@mjfwlaw.com |
| 2705 Bee Cave Road, Suite 220 | 10250 Constellation Blvd. |
| Austin, Texas 78746 | 14th Floor |
| Telephone: (512) 795-8686 | Los Angeles, California 90067 |
| Fax: (512) 795-8787 | Telephone:     (310) 396-9600 |
| | Fax:             (310) 396-9635 |

Attorneys for Plaintiffs and the Proposed Class

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOE SAMBORA and WILLIAM TAYLOR, on behalf of themselves and others similarly situated, | Case No. 3:18-cv-1253 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | 1. VIOLATIONS OF CAL. CIV. CODE §§ 1750, ET SEQ. |
| v. | 2. COMMON LAW FRAUD, INCLUDING FRAUDULENT INDUCMENT, AND FRAUDULENT CONCEALMENT |
| BLUESMART INC., a Delaware corporation, | 3. VIOLATIONS OF CAL. CIV. CODE §§ 1709, 1710 |
| Defendant. | 4. VIOLATIONS OF CAL. CIV. CODE §§ 1792 & 1791.1(a), ET SEQ. (implied warranty of merchantability) |
| | 5. VIOLATIONS OF CAL. CIV. CODE §§ 1792.1 & 1791.1(b), ET SEQ. (implied warranty of fitness) |
| | 6. COMMON LAW IMPLIED WARRANTY OF MERCHANTABILITY |
| | 7. COMMON LAW IMPLIED WARRANTY OF FITNESS |
| | 8. VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.(unfair and fraudulent prongs) |
| | 9. VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.(unlawful prong) |
| | **JURY TRIAL DEMANDED** |

This is a putative class action on behalf of Plaintiffs Joe Sambora and William Taylor ("Plaintiffs") and a nationwide Class and California Subclass of all similarly situated individuals against Defendant Bluesmart, Inc. ("Bluesmart" or "Defendant"). Upon the investigation of counsel and, where so alleged, upon information and belief, Plaintiffs allege as follows:

## I.    NATURE OF THE CASE

1.    Plaintiffs brings this nationwide class action individually and on behalf of the Class defined below against Bluesmart to stop Bluesmart's conduct and obtain relief, including restitution, as well as declaratory and injunctive relief. This class action is brought to remedy violations of California statutory and common law in connection with Bluesmart's fraudulent and deceptive conduct, and breach of statutory and common law implied warranties, related to its marketing, promotion, and sale of its smart baggage products.

2.    Bluesmart is one of the most-recognized and hyped "smart baggage" companies, producing sleekly styled and expensive carry-on and checked bag pieces costing hundreds of dollars per item. Bluesmart recently stated that it has sold over 65,000 pieces of its Series 1 smart baggage, and is currently sold out of pre-orders for its upcoming Series 2 collection. Some Series 2 bags have already been delivered.

3.    Bluesmart's Series 1 and Series 2 carry-on and checked bag pieces were designed to contain non-removable lithium ion battery packs.

4.    Bluesmart advertises that its smart baggage products are compliant with the Federal Aviation Administration ("FAA") Department of Transportation ("DOT") and Transportation and Security Administration ("TSA") rules for carry-on and checked bag air travel.

5.    However, these rules only apply to "portable electronic devices" ("PEDs") and not to smart luggage. In reality, none of these agencies has specifically issued so-called "smart baggage" guidelines. Bluesmart thus affirmatively misstated the regulatory compliance for its products, and consequently misstated the risk to its customers that they would not be able to use their purchases for their intended purpose, namely air travel.

6.    Recently, that risk was realized when virtually all of the large domestic carriers (American Airlines ("American"), Alaska Airlines/Virgin America ("Alaska"), Delta Airlines

("Delta"), Southwest Airlines ("Southwest") and United Airlines ("United")) – following the International Air Transport Association ("IATA") guidance – issued bans on both carry-on and checked smart baggage containing non-removable batteries.

7.      An FAA spokeswoman, Laura Brown, was quoted by CNN as stating that "[t]he airlines' action is consistent with our guidance to not carry lithium ion batteries in the cargo hold."[1]

8.      These restrictions were foreseeable to Bluesmart, and have rendered Bluesmart's products containing non-removable batteries virtually worthless and not fit for their primary intended use. As stated by Alaska Airlines, "[i]f it's not possible to remove the battery from the bag, the bag won't be allowed on the plane."[2]

9.      Indeed, most of Bluesmart's competitors designed their products to contain removable batteries based on experiences with airlines, regulators and airports in other parts of the world, and based on the growing concern among U.S. regulators and carriers over the presence of inaccessible lithium ion batteries in the cargo holds of passenger aircraft.

10.      In addition to affirmative misrepresentations, Bluesmart failed to disclose and/or fraudulently omitted this material information pertaining to the non-removable nature of its products' batteries in selling tens of thousands of its smart bags to consumers.

11.      Finally, Bluesmart just recently began delivering pre-orders of its new Series 2 smart baggage. As alleged below, the tear-down procedures to remove the battery (which involves removing the entire circuit board) for the Series 2 are burdensome and unreasonable, effectively rendering the battery non-removable. On top of this, so many customers have requested returns/refunds of their Series 2 bags that Bluesmart is simply ignoring these requests in violation of its own 30-day "no questions asked" return policy.

12.      The conduct violates the California statutes and common laws set forth below.

13.      As a result, Plaintiffs seek restitution, disgorgement of profits for the fraudulent practices alleged herein, and appropriate declaratory and injunctive relief.

//

---

[1] http://money.cnn.com/2017/12/05/technology/smart-bag-limits/index.html.
[2] https://blog.alaskair.com/travel-tips/smart-bags-on-planes/.

**CLASS ACTION COMPLAINT**

## II.   JURISDICTION AND VENUE

14.    This is a putative class action commenced by Plaintiffs on behalf of themselves and all other similarly situated members of the Class defined below. Pursuant to Defendant's Terms and Conditions, California law is to be applied to all Bluesmart consumers nationwide. Defendant's Terms and Conditions state the following:

> By using our Site, downloading or using or App, or purchasing something from us, you agree to be bound by the following terms and conditions ("Terms of Service" or "Terms") … These Terms of Service and any separate agreements whereby we provide you Services shall be governed by and construed in accordance with the laws of the State of California without regard to its conflict of law provisions ….[3]

15.    In addition, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because Plaintiffs and Defendants are of minimally diverse citizenship and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.  There are likely tens of thousands of members of the Class nationwide.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, a substantial part of the property that is the subject of this action is situated in this District, and the Defendants are subject to personal jurisdiction in this District. In addition, Defendant's Terms and Conditions specify venue in this Court as reproduced herein:

> [A]ny and all claims, causes of action or disputes (regardless of theory) arising out of or relating to these Terms of Service, or the relationship between you and Bluesmart, shall be brought exclusively in the courts located in the county of San Francisco, the U.S. District Court for the Northern District of California. You and Bluesmart agree to submit to the personal jurisdiction of the courts located within the county of San Francisco, California, and agree to irrevocably waive any and all objections to the exercise of jurisdiction over the parties by such courts and to venue in such courts.[4]

## III.   PARTIES

17.    Plaintiff Joe Sambora is a resident of San Francisco, California. Plaintiff Sambora purchased a Bluesmart Series 1 Carry-On on April 25, 2016 and paid $433.92 for his bag.

18.    Plaintiff William Taylor is a resident of Fort Mill, South Carolina. Plaintiff Taylor

---

[3] http://www.bluesmart.com/terms/.
[4] Id.

**CLASS ACTION COMPLAINT**

purchased a Bluesmart Series 2 Cabin 22" carry-on bag. As a "Super Early" purchaser, Mr. Taylor paid $275 for his bag (normal retail $595).

19. Defendant Bluesmart, Inc. is a privately held corporation founded in 2013 and organized under the laws of Delaware with its corporate headquarters located at 111 E. 14th Street #218 New York, New York 10003. Bluesmart designs, manufactures, markets, and sells so-called "smart baggage" to consumers. Bluesmart's smart baggage was designed to contain non-removable batteries that power air travel-related functions such as GPS tracking of the bag, weight sensors to stay under airline-specific weight limits, and USB ports to allow mobile device charging.

## IV.     FACTUAL ALLEGATIONS

### A.  FAA, DOT, and TSA Have Not Approved of or Determined that "Smart Baggage" is Compliant with Existing Regulations

20. For several decades now, there has been a growing concern over the presence of lithium ion batteries on passenger aircraft. According to the FAA, as of May 2017, there had been at least 160 documented incidents involving lithium batteries carried as baggage or cargo since 1991.[5] These incidents have only increased with the proliferation of battery powered portable electronic devices and other items containing batteries.

21. As a result, the FAA, DOT, and TSA have implemented regulations and guidelines regarding the transportation of such batteries as found in consumer electronics. This case primarily involves Bluesmart's false advertising regarding its products' compliance with FAA regulations and its breach of statutory and implied common law warranties regarding the suitability of its products for air travel.

22. The FAA regulations allow for "portable electronic devices (e.g., watches, calculating machines, cameras, cellular phones, laptop and notebook computers, camcorders, medical devices etc.) containing dry cells or dry batteries (including lithium cells or batteries)" to be carried as either checked or carry-on baggage. *See, e.g.,* 49 C.F.R. § 175.10(a)(18).

23. However, larger consumer products containing batteries, such as the restrictions on

---

[5]
https://www.faa.gov/about/office_org/headquarters_offices/ash/ash_programs/hazmat/aircarrier_info/media/Battery_incident_chart.pdf.

**CLASS ACTION COMPLAINT**

hoverboards or balance scooters, have been handled as *sui generis* categories because they do not constitute PEDs as envisioned by the FAA.

24.     Similarly, there is no FAA, DOT or TSA regulation endorsing, approving, or deeming compliant smart baggage, and any claim that a particular piece of smart baggage is FAA- DOT- or TSA-compliant is false or misleading.

25.     Even if "smart baggage" technically is a PED for purposes of FAA regulations, FAA guidance on carrying PEDs as checked baggage, including but not limited to protection from accidental activation, militates against the use of non-removable batteries.

**B.  Following IATA Guidance and with FAA Support, Major U.S. Carriers Ban Smart Baggage with Non-Removable Batteries**

26.     As of the end of 2017, American, Alaska/Virgin, Delta, Southwest, and United all announced that smart baggage (including carry-on bags) must contain removable batteries, and that (beginning January 15, 2018) any such baggage without removable batteries will not be permitted on the aircraft.

27.     The actions of these airlines follow the recommendation of the International Air Transport Association ("IATA"), which represents carriers for 83% of the world's air traffic.[6] Altogether, American, Alaska/Virgin, Delta, Southwest, and United serve more than 80% of the U.S. domestic air traffic market.

28.     As stated by American: "If the battery cannot be removed, the bag will not be allowed."[7] The other airlines' statements contain similar language.

29.     The FAA has expressed support for the airlines' actions in banning smart baggage without removable batteries. As stated by FAA spokeswoman Laura Brown, "[t]he airlines' action is consistent with our [FAA] guidance to not carry lithium ion batteries in the cargo hold."[8]

**C.  Bluesmart Falsely Advertises That Its Products as "TSA, DOT & FAA Compliant"**

30.     At all material times on its website and elsewhere, Bluesmart prominently advertises its "smart baggage" products as "TSA, DOT & FAA Compliant." Previous versions of the Bluesmart

---

[6] https://www.iata.org/whatwedo/safety/Documents/IATA-Guidance-on-Smart-Baggage-with-integrated-lithium-batteries-and-electronics.pdf.
[7] http://news.aa.com/press-releases/press-release-details/2017/Travel-smart-with-smart-bags/default.aspx.
[8] http://money.cnn.com/2017/12/05/technology/smart-bag-limits/index.html.

**CLASS ACTION COMPLAINT**

website went as far as displaying the official FAA seal. The following is a screenshot of Bluesmart's website:



31.    Bluesmart's claim that its products are compliant with federal regulations is false and misleading. As noted by Delta in its statement restricting smart baggage:[9]

> Many smart bag manufacturers advertise their products as being approved by the Federal Aviation Administration or Transportation Security Administration, which **may give customers the false impression that all smart bags are accepted for transport**. To date, neither the TSA nor FAA have endorsed a smart bag as approved.

> (Emphasis added.)

32.    Despite the IATA's guidance, the airlines' actions, Delta's above statement, and the FAA's position endorsing the restrictions, Bluesmart continues to claim that its products containing non-removable batteries are FAA compliant:[10]

> All our products meet DOT, FAA, FCC and UN38.3 regulations. We are aware that the [IATA] which proposes standards for the airline industry and some airlines have recently made their own regulations with tighter requirements than the industry regulators. These new airline regulations stipulate that smart luggage with built-in non-removable batteries cannot currently be checked into the hold.

33.    Bluesmart's false statement completely ignores the FAA's stated position that the

---

[9] http://news.delta.com/delta-puts-limits-select-smart-bags-out-safety-concerns.
[10] http://oooo.bluesmart.com/2017/12/01/travel-smarter-with-smart-bags/.

**CLASS ACTION COMPLAINT**

airlines' bans are consistent with FAA guidance and regulations, as well as the clear import of existing regulations and guidelines.

**D. Because Bluesmart's Series 1 Carry-On and Checked Bags Contain Non-Removable Batteries, They Are Rendered Virtually Worthless in Light of the Restrictions**

34.     Due to similar restrictions imposed on smart baggage in East Asia, and in light of the 2015 hoverboard ban in the U.S., many smart baggage makers foresaw U.S. restrictions on smart baggage, including the requirement of a removable battery.

35.     For example, a recent Mashable article includes an interview with Atara Dzikowski, the CEO and co-founder of Samsara, one of Bluesmart's competitors. He stated that in light of baggage and luggage restrictions already in place elsewhere in the world, Samsara designed its products to contain a removable battery with an eye toward future U.S. regulations or restrictions.[11] Similarly, according to the same article, Raden stated that it designed its smart baggage with easily removed batteries "with the possibility of future battery limitations" in mind.[12]

36.     In addition to Samsara and Raden, the Mashable article notes that most if not all other major smart baggage companies (Away, Marlon, Trunkster) designed their baggage with removable batteries.[13]

37.     Bluesmart concedes that its own batteries for the Series 1 Check and Carry-On products are non-removable. Bluesmart's current Compliance website (last visited January 19, 2018) mentions nothing of the airlines' bans and completely omits the IATA's position on removable batteries. As far as Bluesmart's own products, the page says the following in response to the query "Can I remove the battery?":[14]

> The batteries can't be removed. ***They are installed into the suitcases to comply with all industry regulations.*** The principal purpose of the installed Lithium battery is to power the Electronic Mainboard. This Mainboard is what makes the suitcase smart and it controls all the features including the GPS location tracker, TSA-Approved automatic lock, the in-built weight system (Check 29" only), the ability to power another device if necessary and, Bluetooth communication. ***IATA does not require you to remove an installed battery*** which is why we've

---

[11] http://mashable.com/2017/12/04/smart-luggage-suitcases-american-airlines-batteries/#xL4jD6Z_cOqQ.
[12] Id.
[13] Id. The article states that Bluesmart's upcoming Series 2 collection (which is sold out in pre-orders) contain removable batteries. Upon information and belief, this statement is not correct and the carry-on ("Cabin 22") and check ("Check 29") bags in the Series 2 collection have been designed with non-removable batteries.
[14] https://bluesmart.zendesk.com/hc/en-us/articles/202928605-Bluesmart-Compliance.

**CLASS ACTION COMPLAINT**

made the battery non-removable. Other companies claim to have Smart Luggage products are forced to remove their batteries, because their only function is to charge devices, and so they are considered "Power banks" and can't be checked in. ***Our battery is not a power bank.*** It is an integrated system which streamlines your journey performing important functionalities such as, the location tracker to make sure you never lose your luggage again.

(Emphasis in original.)

38.    Because the Series 1 battery cannot be removed, the bags are virtually useless for air travel.

**E.    Bluesmart Contends that the Series 2 Battery is Removable Despite Complicated and Burdensome Tear-Down Procedures and Is Refusing to Honor Its Own Return/Refund Policy**

39.    While conceding that the Bluesmart Series 1 contains non-removable batteries, Bluesmart is now contending that the Series 2 battery is removable.

40.    However, the battery itself is not, and upon information and belief was never designed to be removable as a stand-alone item. Per instructions provided by Bluesmart, each time a Series 2 is taken on a flight, the consumer will be required to remove not just the battery – but the entire electronic module – from the bag. Such a procedure involves exposing circuitry and wiring to damage during the removal process and potentially during storage while removed.[15]

41.    Aside from the unreasonable risk of damaging the electronics during removal and the large size of the removed module, the procedure of removing the entire electronic module is likewise unreasonable. Consumers are required to have a screwdriver (which itself may not be allowed as carry-on luggage) for unscrewing the protective plate. Consumers are then required to physically unplug the battery from the rest of the exposed circuitry, and remove the entire electronic module. This activity of tearing down electronics not only looks suspicious to airport security, but it is unreasonably cumbersome and in direct contradiction to Bluesmart's marketing of the Series 2.

42.    The requirement to follow these complex procedures and to expose circuitry and wiring to damage each time at the airport is unreasonable and renders Bluesmart's Series 2 products unfit for their ordinary uses.

43.    On top of this, upon information and belief, Bluesmart is refusing to honor

---

[15] http://oooo.bluesmart.com/2018/01/18/how-to-remove-the-battery-on-your-bluesmart/.

**CLASS ACTION COMPLAINT**

refund/return requests by consumers. Bluesmart's "Warranty and Return Policy" states a 30 day return policy for any reason or no reason at all. Apparently fearing a flood of returns, Bluesmart is refusing to honor this policy for its Series 2 products, which are in the process of being delivered to customers. Upon information and belief, Bluesmart never intended to honor its Warranty and Return Policy, thus constituting consumer fraud.

**F.  Individual Plaintiffs' Facts**

44.    As alleged above, Plaintiff Joe Sambora owns a Bluesmart Series 1 Cabin 22" that he purchased on April 25, 2016 for $433.92.

45.    On or about January 13, 2018, Plaintiff Sambora arrived at San Francisco International Airport to board an international flight to Tokyo, Japan for a business trip. Upon being advised of the smart baggage travel ban that went into effect the previous day, Plaintiff Sambora was faced with the choice of missing his flight or ditching his Bluesmart bag. Plaintiff Sambora decided to purchase a new bag at the airport and left his Bluesmart bag behind with a friend.

46.    After Plaintiff Sambora's Bluesmart bag was rejected from his flight, Plaintiff Sambora reached out to Bluesmart to ask how he could return the bag since he could no longer use it for air travel. As of the filing of this Complaint, Bluesmart has not responded to Plaintiff Sambora's request.

47.    As alleged above, Plaintiff Taylor owns a Bluesmart Series 2 Cabin 22" that he purchased on or about June 28, 2017. Plaintiff Taylor received his Bluesmart Series 2 Cabin 22" on or about December 26, 2017.

48.    Upon learning of the smart baggage ban and studying the complicated tear-down procedures for the Series 2 battery, Plaintiff Taylor elected to return his Bluesmart Series 2 under Bluesmart's "Warranty & Return Policy" effective September 1, 2017. That policy states that "Bluesmart will accept returns on any products purchased directly from Bluesmart.com within thirty (30) days of the delivery date."

49.    On or about January 2, 2018, within one (1) week of the delivery date, Plaintiff Taylor sent Bluesmart a return request for his Bluesmart Series 2. Despite repeated follow-ups by Plaintiff Taylor, Bluesmart has yet to respond to is return request.

**CLASS ACTION COMPLAINT**

1     **G. Defendants Have Been Unjustly Enriched at Plaintiff's and Class Members' Expense**

2          50.     Plaintiffs and the Class have conferred substantial benefits on the Defendant by

3     purchasing Bluesmart's pricey smart baggage products based upon the belief they could use the

4     products for their primary intended purpose: air travel. Plaintiffs each paid several hundred dollars for

5     their Bluesmart products. The standard retail price of the Series 2 Cabin 22" is $450 and is $540 for

6     the Check 29". The original Series 1 products were similarly expensive.

7          51.     Bluesmart knew or should have known that consumers' payments for its products were

8     given and received with the expectation that consumers would actually be able to use bags for air

9     travel.

10         52.     Because of the deliberate fraudulent practices, concealments, and other wrongful

11    activities described above, including but not limited to, the affirmative false advertising claims, the

12    fraudulent omissions, and the breach of statutory and common law warranties, Bluesmart has been

13    unjustly enriched by its wrongful receipt of Plaintiffs and Class Members' monies.

14         53.     As a direct and proximate result of Bluesmart's wrongful conduct and unjust

15    enrichment, Plaintiffs suffered injury-in-fact in that they lost money or property in an amount to be

16    determined at trial. Bluesmart should be required to pay restitution to Plaintiffs and all Class

17    Members.

18         54.     Bluesmart should be permanently enjoined from engaging in the illegal conduct

19    alleged herein.

20         55.     Bluesmart should be required to account for and disgorge all monies, profits and gains

21    which they have obtained or will unjustly obtain in the future at the expense of consumers.

22                      **V.     CLASS ACTION ALLEGATIONS**

23         56.     Plaintiffs bring this suit as a class action on behalf of themselves and all others

24    similarly situated Bluesmart customers (the "Class") pursuant to Rule 23 of the Federal Rules of Civil

25    Procedure.  Plaintiffs seek to represent the following Class:

26               All persons who purchased a Bluesmart Series 1 or Series 2 Carry-On
                 or Check bag piece for personal use and not for resale in the United
27               States since February 26, 2014.

28

---

**CLASS ACTION COMPLAINT**

57. In the event a nationwide class cannot be certified, Plaintiff Sambora also seeks to represent the following California Subclass ("California Subclass"):

> All persons who purchased a Bluesmart Series 1 or Series 2 Carry-On or Check bag piece for personal use and not for resale in California since February 26, 2014.

58. In the event a nationwide class cannot be certified, Plaintiff Taylor also seeks to represent the following South Carolina Subclass ("South Carolina Subclass"):

> All persons who purchased a Bluesmart Series 1 or Series 2 Carry-On or Check bag piece for personal use and not for resale in South Carolina since February 26, 2014.

59. Excluded from the Class and Subclasses are (a) any Judge or Magistrate presiding over this action and members of their families; (b) the Defendant, and their subsidiaries and affiliates; (c) the lawyers in this action; and (d) all persons who properly execute and file a timely request for exclusion from the Class.

60. Plaintiffs reserve the right to re-define the Class and Subclasses (hereinafter collectively referred to as the "Class," unless otherwise specified), or to create additional sub-classes, prior to or as of the time for moving for class certification.

61. The exact number of Class Members is unknown as such information is in the exclusive control of the Defendants. Plaintiffs, however, believe that the Class encompasses tens of thousands of individuals who are geographically dispersed throughout the Country. Bluesmart recently stated that 65,000 pieces of Bluesmart baggage are currently in circulation, and that Bluesmart is sold out of pre-orders for its Series 2 products. Therefore, the number of persons who are members of the Class described above are so numerous that joinder of all members in one action is impracticable.

62. Questions of law and fact that are common to the entire Class predominate over individual questions because Defendant's common course of conduct complained of herein was generally applicable to the entire Class. These legal and factual questions include, but are not limited to:

> a. The nature, scope, duration, and operations of Defendant's wrongful practices;

---

11
**CLASS ACTION COMPLAINT**

b.  Whether Defendant's Terms and Conditions result in California substantive law applying nationwide to all Class Members;

c.  Whether Bluesmart's products are "goods" pursuant to Cal. Civ. Code § 1761(a);

d.  Whether Bluesmart, Inc. is a "person" pursuant to Cal. Civ. Code § 1761(c);

e.  Whether Plaintiff and Class Members are "consumers" pursuant to Cal. Civ. Code § 1761(d);

f.  Whether the invoicing and sale of Bluesmart's products constitutes a "transaction" between Plaintiffs and Class Members and Defendant pursuant to Cal. Civ. Code § 1761(e).

g.  Whether Bluesmart misrepresented the source, sponsorship, approval, or certification of goods pursuant to Cal. Civ. Code § 1770(a)(2);

h.  Whether the statement that Bluesmart's products are FAA-compliant constitutes a "representation" pursuant to Cal. Civ. Code § 1770(a)(5) and/or (a)(16);

i.  Whether Bluesmart represented that its products contained "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" pursuant to Cal. Civ. Code § 1770(a)(5).

j.  Whether Bluesmart advertised its products with the intent not to sell them as advertised in violation of Cal. Civ. Code § 1770(a)(9);

k.  Whether Bluesmart's failure to advise consumers of the foreseeable risk that they would not be able to use Bluesmart's products for their primary intended purpose (namely, air travel), constitute actionable omissions in violation of the California Consumer Legal Remedies Act ("CLRA");

l.  Whether Bluesmart's representations regarding the Products being compliant with FAA, DOT and/or TSA regulations are likely to deceive reasonable consumers;

m.  Whether Bluesmart's representations that the Products are compliant with the FAA, DOT and/or TSA regulations are material;

**CLASS ACTION COMPLAINT**

n.   Whether Bluesmart concealed or did not otherwise disclose the significant risk that its products would be banned from air travel rendering because they contained non-removable batteries;

o.   Whether Plaintiffs and Class Members are entitled to injunctive relief, including but not limited to, an order requiring Defendants to buy back or replace its products that contain non-removable batteries sold during the Class Period pursuant to Cal. Civ. Code § 1780(a)(2);

p.   Whether Defendant engaged in fraudulent and deceitful practices as to Class Members;

q.   Whether Defendant's conduct amounts to violations of the California Unfair Competition Law;

r.   Whether Defendant's conduct amounts to violations of the California False Advertising Law;

s.   Whether Defendant has been unjustly enriched;

t.   Whether Defendant's conduct violates the California Consumer Legal Remedies Act;

u.   Whether Plaintiffs were injured; and

v.   Whether Plaintiffs and the Class are entitled to restitution, and, if so, the proper measure of restitution.

63.   Plaintiffs' claims are typical of the members of the Class because Plaintiffs and Class Members were injured by Defendants' same wrongful practices including but not limited to the false statements regarding FAA-compliance, the fraudulent omissions regarding the risk of future battery restrictions, and breach of warranties. In addition, California law is deemed to apply nationwide pursuant to Defendant's Terms and Conditions. Plaintiffs' claims arise from the same practices and course of conduct that gives rise to the claims of the Class Members, and are based on the same legal theories.  Plaintiffs have no interests that are contrary to or in conflict with those of the Class they seek to represent.

64.   Questions of law or fact common to Class Members predominate. A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because

individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable. While the Class Members' monetary losses are likely to be in the millions of dollars in the aggregate, the individual monetary loss incurred by each Class Member are, as a general matter, too small to warrant the expense of individual suits. The likelihood of individual Class Members prosecuting separate individual claims is remote, and even if every Class Member could afford individual litigation, the court system would be unduly burdened by the individual litigation of such cases. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials on the same factual issues.  Management of this action that would not preclude its maintenance as a class action. Certification of the Class under Rule 23(b)(3) is proper.

65.    Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Class would be proper.  The Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to Class Members as a whole and certification of the Class under Rule 23(b)(2) proper.

66.     Direct notice to the proposed Class is possible here, as Defendant maintains business records, including invoices and payment information, for each and every transaction listing customer contact information.

**COUNT I**
**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**CAL. CIV. CODE §§ 1750, *et seq.***
*(On Behalf of Plaintiffs and the Class)*

67.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

68.    Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and lost money or property as a result of Defendant's actions.

69.    At all times relevant hereto, Defendant was and is a "person" as defined in Cal. Civ. Code § 1761(d).

70.    At all times relevant hereto, Plaintiffs and each Class Member was and is a

14

"consumer" as defined in Cal. Civ. Code § 1761(d).

71.     At all times relevant hereto, Defendant's smart baggage products constitute "goods" as defined in Cal. Civ. Code § 1761(a).

72.     At all times relevant hereto, Defendant's sales of its smart baggage products to Plaintiff and members of the Class, constitute "transactions" as defined in Civil Code § 1761(e).

73.     The following subsections of Cal. Civ. Code § 1770(a) prohibit the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction is intended to result or which results in the sale or lease of goods or services to any consumer:

   (2)     Misrepresenting the source, sponsorship, approval, or certification of goods or services;

   (5)     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

   (9)     Advertising goods or services with intent not to sell them as advertised;

74.     Defendant has violated and continues to violate Cal. Civ. Code. § 1770(a)(2) by misrepresenting that its smart baggage products are FAA, DOT and/or TSA-compliant.

75.     Defendant has violated and continues to violate Cal. Civ. Code. § 1770(a)(5) by representing to customers that its smart baggage products are FAA, DOT and/or TSA-compliant and that they may be used for air travel.

76.     Defendant has violated and continues to violate Cal. Civ. Code. § 1770(a)(9) by advertising smart baggage products that are FAA, DOT, and/or TSA-compliant, with the intent not to actually provide such goods to Plaintiffs and Class Members.

77.     Defendant has violated and continues to violate Cal. Civ. Code §§ 1170(a)(2), (a)(5), and (a)(9) by: making fraudulent omissions that were contrary to representations actually made by Defendant; and, fraudulently omitting material facts Defendant was obliged to disclose.

78.   Plaintiffs and Class Members relied on such omissions.

79.   Namely and non-exhaustively, Defendant fraudulently omitted the significant likelihood that its products would be banned from air travel in contradiction of its statements that its products were FAA-compliant, and fraudulently omitted the fact that its products' design including non-removable batteries could render the products virtually useless for their primary intended use (namely, air travel). Bluesmart failed to disclose material facts regarding the risks of purchasing smart baggage products containing non-removable batteries. Plaintiffs and Class Members relied on these omissions in purchasing Bluesmart's products.

80.   Plaintiffs are concurrently filing the declaration of venue required by Cal. Civ. C. § 1780(d).

81.   Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs currently seek restitution and an order enjoining Defendants from engaging in the methods, acts, and practices alleged herein, and any other relief deemed proper by the Court.

82.   Concurrent with filing the Complaint, Plaintiffs are sending Defendant notice advising Defendant of its violations of Section 1770 of the CLRA (the "Notice"). The Notice complied in all respects with Section 1782 of the CLRA. Plaintiff sent the Notice by Certified U.S. Mail, return-receipt requested to Defendant at Defendant's principal place of business. Plaintiffs' Notice advised Defendant it must correct, repair, replace or otherwise rectify its conduct alleged to be in violation of Section 1770. If Defendant fails to correct, repair, replace or otherwise rectify the conduct alleged herein, Plaintiff will amend this Complaint to seek damages.

83.   Pursuant to Cal. Civ. Code § 1780(e), Plaintiffs seek an award of restitution, costs and attorney's fees.

**COUNT II**
**COMMON LAW FRAUD, INCLUDING FRAUDULENT INDUCEMENT, AND FRAUDULENT CONCEALMENT**
*(On Behalf of Plaintiffs and the Class)*

84.   Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

85.   Bluesmart, either directly and/or through its personnel and agents, made or caused to

16

be made false and fraudulent representations of material facts, and failed to disclose material facts, to Plaintiff and all Class Members regarding Bluesmart's smart baggage products.

86.    Namely, Bluesmart also made affirmative statements that the Products are FAA, DOT andor TSA compliant. Bluesmart sold Plaintiff and Class Members its products with actual or constructive knowledge that they were not FAA, DOT, and/or TSA-compliant despite marketing statements and assurances to the contrary. Bluesmart failed to disclose material facts regarding the risks of purchasing smart baggage products containing non-removable batteries.

87.    Bluesmart also fraudulently induced Plaintiffs' and Class Members' purchases of its products with its generous "no questions asked" 30-day return policy. However, Bluesmart never intended to live up to this policy and has in fact failed to honor return requests under the policy.

88.    At the times Bluesmart made or caused to be made these representations and concealed material facts, Plaintiffs and the members of the Class were unaware of the falsity of these representations, and reasonably believed them to be true and had no knowledge of the material facts that Bluesmart did not disclose.

89.    In making these representations or causing them to be made or failing to disclose material facts, Bluesmart knew they were false and intended that the Plaintiffs and Class Members would rely upon such misrepresentations and failures to disclose material facts.

90.    Plaintiffs and all Class Members did, in fact, rely upon such misrepresentations and/or material omissions, as a consequence, paid for Bluesmart products.

91.    As a direct and proximate result of Defendant's deceptive, fraudulent, and unfair business practices, Plaintiffs and Class Members have lost money or property.

92.    Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Bluesmart for restitution, declaratory relief and injunctive relief and any other relief the Court deems proper.

//

**<u>COUNT III</u>**
**VIOLATION OF CAL. CIV. CODE §§ 1709, 1710**
**(Deceit by Concealment)**
**(*On Behalf of Plaintiffs and the Class*)**

93.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

94.      Defendant engaged in deceit by suppressing facts that it was bound to disclose. Namely, Bluesmart sold Plaintiffs and Class Members smart baggage products with non-removable batteries and did not disclose the significant risk that such products would be banned from air travel rendering the products virtually worthless.

95.     Defendant engaged in deceit by making promises that its products were FAA, DOT, and/or TSA-compliant.

96.     Defendants engaged in deceit by suggesting, as a fact, that which is not true. Namely, Defendants suggested to Plaintiffs and Class Members that that its products were FAA, DOT, and/or TSA-compliant. This statement was and is false.

97.     Defendant's deceitful conduct was perpetrated with the intent to induce Plaintiffs and Class Members to act in reliance thereon.

98.     Plaintiffs and Class Members reasonably believed Defendant's representations that its products were FAA, DOT, and/or TSA-compliant, and in reliance on those representations, Plaintiff and Class Members purchased Bluesmart's products containing non-removable batteries.

99.     Plaintiffs would not have Bluesmart's products containing non-removable batteries if they had knowledge of Bluesmart's deceitful conduct.

100.    As a direct and proximate result of the foregoing acts, omissions, Plaintiffs and Class Members have suffered injury in fact and are entitled to restitution in an amount to be determined at trial.

//

**CLASS ACTION COMPLAINT**

**COUNT IV**

**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY, CAL. CIV. CODE §§ 1792 & 1791.1(a)**
*(On Behalf of Plaintiff Sambora and the Subclass)*

101.    Plaintiff Sambora re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

102.    Plaintiff Sambora and Subclass Members are "retail buyers" within the meaning of §1791(b) of the California Civil Code.

103.    Defendant's smart baggage products are "consumer goods" within the meaning of §1791(a) of the California Civil Code.

104.    Bluesmart is a "distributor", "manufacturer", and/or "retailer" of smart baggage products within the meaning of §1791(e), (j), and (l) of the California Civil Code.

105.    Bluesmart impliedly warranted to Plaintiff Sambora and Subclass Members that its smart baggage products were "merchantable" within the meaning of §§ 1791.1(a) and 1792 of the California Civil Code.

106.    Bluesmart breached the implied warranty of merchantability to Plaintiff Sambora and Subclass Members because Bluesmart's smart baggage products containing non-removable batteries (i) are not fit for the ordinary purpose for which they are used; (ii) are not adequately contained, packaged and labeled (i.e., lacked a sufficiently conspicuous warning that smart baggage with non-removable batteries may not be FAA, DOT, and/or TSSA-compliant or otherwise banned from air travel); and (iii) do not conform to the promises or affirmations of fact made on the container or label (i.e., that it was FAA, DOT, and/or TSA-compliant).

107.    Bluesmart's failure to warn Plaintiff Sambora and Subclass Members of these risks was willful.

108.    As a proximate result of Bluesmart's breach of the implied warranty of merchantability, Plaintiff Sambora and Subclass Members sustained damages including but not limited to the receipt of goods they would not have otherwise purchased and which are not fit for the ordinary purpose for which they are used.

109.    Pursuant to §§ 1791.1(d) and 1794 of the California Civil Code, Plaintiff Sambora and

**CLASS ACTION COMPLAINT**

Subclass Members seek and are entitled to restitution, civil penalties and other legal and equitable relief including, a right of reimbursement, as well as costs, expenses and attorneys' fees. Plaintiff Sambora will amend this complaint to seek damages.

## COUNT V
### VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF FITNESS, CAL. CIV. CODE §§ 1792.1 & 1791.1(b)
### *(On Behalf of Plaintiff Sambora and the Subclass)*

110.    Plaintiff Sambora re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

111.    Plaintiff Sambora and Subclass Members are "retail buyers" within the meaning of §1791(b) of the California Civil Code.

112.    Defendant's smart baggage products are "consumer goods" within the meaning of §1791(a) of the California Civil Code.

113.    Bluesmart is a "distributor", "manufacturer", and/or "retailer" of smart baggage products within the meaning of §1791(e), (j), and (l) of the California Civil Code.

114.    Bluesmart specifically marketed its smart baggage products for air travel and as FAA, DOT, and TSA-compliant. At the time of the sale of the product, Defendants knew or should have known that Plaintiff Sambora and Subclass Members would (i) use Defendant's smart baggage products for air travel, and (ii) reasonably rely on Bluesmart's skill or judgment to select or furnish suitable goods for that purpose.

115.    Plaintiff Sambora and Subclass Members did in fact purchase Bluesmart's smart baggage products for the particular purpose of air travel.

116.    Plaintiff Sambora and Subclass Members did in fact reasonably rely on Bluesmart's skill or judgment to select or furnish suitable goods for that purpose.

117.    By manufacturing, marketing, and distributing its products without an adequate warning, Bluesmart breached its implied warranty of fitness for a particular purpose and is liable to Plaintiffs and Subclass Members.

118.    Bluesmart's failure to warn Plaintiff Sambora and Subclass Members was willful.

119.    As a proximate result of Bluesmart's breach of the implied warranty of fitness,

Plaintiff Sambora and Subclass Members sustained damages including but not limited to the receipt of goods they would not have otherwise purchased and which are not fit for the ordinary purpose for which they are used.

120.    Pursuant to §§ 1791.1(d) and 1794 of the California Civil Code, Plaintiff Sambora and Subclass Members are entitled to and hereby seek restitution, civil penalties and other legal and equitable relief including, a right of reimbursement, as well as costs, expenses and attorneys' fees. Plaintiff will amend this complaint to seek damages.

## COUNT VI
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
*(On Behalf of Plaintiffs and the Class)*

121.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

122.    Beginning in 2014, and as set forth above, Defendant represented to consumers, including Plaintiffs and Class Members, by advertising, marketing, labeling/packaging and other means, that its smart baggage products were suitable for air travel.  Plaintiffs and Class Members bought those goods from the Defendant.

123.    Defendant was a merchant with respect to goods of the kind which were sold to Plaintiffs and Class Members, and there was in the sale to Plaintiffs and Class Members an implied warranty that those goods were merchantable.

124.    However, Defendant breached that warranty implied in the contract for the sale of goods in that Bluesmart's smart baggage products containing non-removable batteries are in fact not suitable for air travel, as set forth in greater detail above.

125.    As a result thereof Plaintiffs and Class Members did not receive goods as impliedly warranted by Defendant to be merchantable.

126.    As a proximate result of this breach of warranty by Defendant, Plaintiffs and Class Members have been damaged.

127.    Plaintiffs are concurrently giving notice of Defendant's breach. If the violations are not remedied or cured, Plaintiffs will amend this complaint to seek damages in an amount to be determined at trial.

**CLASS ACTION COMPLAINT**

## COUNT VII
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### *(On Behalf of Plaintiffs and the Class)*

128.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

129.    Beginning in 2014, and as set forth above, Defendant represented to consumers, including Plaintiffs and Class Members, by advertising, marketing, labeling/packaging and other means, that its smart baggage products were suitable for air travel.  Plaintiffs and Class Members bought those goods from the Defendant, in reliance on Defendant's skill and judgment.

130.    At the time of sale, Defendant had reason to know the particular purpose for which the goods were required, and that Plaintiffs and Class Members were relying on Defendant's skill and judgment to select and furnish suitable goods so that there was an implied warranty that the goods were fit for this purpose.

131.    However, Defendant breached the warranty implied at the time of sale in that Plaintiffs and Class Members did not receive suitable goods, and the goods were not fit for the particular purpose for which they were required in that Bluesmart's smart baggage containing non-removable batteries is not suitable for use by Bluesmart's customers, as set forth in detail above.

132.    As a proximate result of this breach of warranty by Defendant, Plaintiffs and Class Members have been damaged.

133.    Plaintiffs are concurrently giving notice of Defendant's breach. If the violations are not remedied or cured, Plaintiffs will amend this complaint to seek damages in an amount to be determined at trial.

## COUNT VIII
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
## CAL. BUS. & PROF. CODE § 17200, *et seq*.
### ("unfair" and "fraudulent" prongs)
### *(On Behalf of Plaintiffs and the Class)*

134.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

135.    California Business & Professions Code section 17200 prohibits "unfair competition" which includes "unfair" and "fraudulent" business practices.

136.   Bluesmart engaged in unfair and fraudulent business practices by advertising, marketing, and selling its smart baggage products as FAA, DOT, and TSA-compliant when such statements were in fact false and misleading.

137.   Bluesmart engaged in unfair and fraudulent business practices by advertising, marketing, and selling its smart baggage products with a generous "no questions asked" 30-day return policy. However, Bluesmart never intended to abide by this policy and in fact has refused to honor return requests under the policy.

138.   Bluesmart's business practices, as alleged herein, are unfair because: (1) the injury to the consumer is substantial—they were charged hundreds of dollars for products they cannot use for their intended purpose; (2) the injury is not outweighed by any countervailing benefits to consumers or competition, as there can be no benefit to consumers where they pay for a product based on materially false statements about their ability to use that product for its primary intended purpose; and (3) consumers could not reasonably have avoided the injury.

139.   Bluesmart's business practices are also unfair because its materially false and misleading advertising, marketing, promotion, and sale of its smart baggage products offends an established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  Such public policy is tethered to a specific constitutional, statutory provision, including California's consumer protection statutes, as alleged herein.

140.   Bluesmart's business practices as alleged herein are fraudulent because Defendants make material misrepresentations and omissions in the marketing, promotion, and sale of its products. These misrepresentations and omissions by Defendants were material, in that a reasonable consumer would attach importance to the ability to use Bluesmart's products for air travel.

141.   Bluesmart's conduct is likely to deceive reasonable consumers. Indeed, reasonable consumers would believe that Bluesmart's products are FAA, DOT, and/or TSA-compliant based upon Bluesmart's representations, when in fact this is not the case.

142.   Plaintiffs and Class Members relied on Bluesmart's misrepresentations and omissions of material facts. Had Defendants disclosed to Plaintiffs and Class Members that their products were not suitable for air travel, Plaintiffs would not have paid for the products, or would have insisted

products that were suitable for air travel.

143.    Bluesmart's acts and practices were false, misleading, deceptive, and unfair to consumers, in violation of the California Unfair Competition Law.

144.    As a direct and proximate result of Bluesmart's deceptive, fraudulent, and unfair practices, Plaintiffs and members of the Class have lost money and suffered injury in fact in an amount to be determined at trial.

145.    Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against the Defendant for restitution and injunctive relief.

**COUNT IX**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE § 17200,** *et seq.*
**("unlawful" prong)**
*(On Behalf of Plaintiffs and the Class)*

146.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

147.    The actions of Defendant, as alleged herein, constitute illegal and unlawful practices committed in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

148.    Defendant has engaged in a scheme of invoicing and collecting money for smart baggage products it advertises, markets, promotes, and sells as compliant and suitable for air travel, but does not supply products that meet those representations. In addition, Defendant is not honoring its own return policy. In doing these actions, Defendants are violating the law, including the common law and violations of: (1) Cal. Civ. Code §§ 1770(a)(2), 1770(a)(5), and 1770(a)(9); (2) Cal. Civ. Code §§ 1709 & 1710; (3) Cal. Civ. Code §§ 1791 & 17922; and Cal. Bus. & Prof. Code § 17200 et seq.

149.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and Class Members seek an order of this Court enjoining Defendants from engaging in the unfair competition alleged herein in connection with advertising, marketing, promoting, and selling products based upon misrepresentations and omissions of material facts, as alleged in greater detail above.

150.    Additionally, Plaintiffs request an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendant by means of the unfair competition alleged herein.

151.    As a direct and proximate result of Bluesmart's deceptive, fraudulent, and unfair practices, Plaintiffs and members of the Class have lost money and suffered injury in fact in an amount to be determined at trial.

152.    Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against the Defendant for restitution and injunctive relief.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the Members of the Class defined herein, pray for relief and judgment on all Counts of the Complaint and request the following:

A.   An order certifying the action may be maintained as a class action and appointing Plaintiffs as the Class Representatives and their counsel as Class Counsel;

B.   For restitution on behalf of Plaintiffs and all Class Members;

C.   Imposition of a constructive trust upon all monies and assets Defendant has acquired as a result of unfair practices;

D.   For all appropriate declarative and injunctive relief, enjoining Defendant from pursuing and/or continuing the unlawful conduct complained in herein;

E.   For an order declaring and/or a judicial determination of the respective rights and duties of Plaintiffs, the Class and Defendant with respect to whether Defendants violated Cal Civ. C. §§ 1750, *et seq.*, Cal. Civ. Code §§ 1709, 1710, Cal. Civ. Code §§ 1791, 1792, Cal. Bus. & Prof. C. §§ 17200, *et seq.*, and the common law;

F.   For attorneys' fees and reimbursement of all costs for the prosecution of this action;

G.   For pre-judgment and post-judgment interest; and,

H.   For such other and further relief this Court deems just and appropriate.

### **DEMAND FOR JURY TRIAL**

Plaintiffs respectfully demand a trial by jury on all issues within the instant action so triable.

**CLASS ACTION COMPLAINT**

Dated: February 26, 2018

By:_____

**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**
Gillian L. Wade (CA Bar No. 229124)
gwade@mjfwlaw.com
Sara Avila (CA Bar No. 263213)
savila@mjfwlaw.com
10250 Constellation Blvd.
14th Floor
Los Angeles, California 90067
Telephone:    (310) 396-9600
Fax:              (310) 396-9635


**SLACK & DAVIS, LLP**
Michael L. Slack (TX Bar No. 18476800)
(*pro hac vice* anticipated)
mslack@slackdavis.com
John R. Davis (CA Bar No. 308412) (*pro hac vice* anticipated)
jdavis@slackdavis.com
2705 Bee Cave Road, Suite 220
Austin, Texas 78746
Telephone: (512) 795-8686
Fax: (512) 795-8787


*Counsel for Plaintiffs and the Class*

**CLASS ACTION COMPLAINT**